IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN L. HOPKINS, | : |
| Plaintiff, | : |
| v. | :    C.A. No. 15-206-LPS |
| CONCORDE CAREER COLLEGES, INC., | : |
| Defendant. | : |

Jennifer C. Bebko Jauffret, Lori A. Brewington, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Patrick J. Hannon, SHILEPSKY HARTLEY MICHON ROBB, LLP, Boston, MA

    Attorneys for Plaintiff

David A. Dorey, Adam V. Orlacchio, Mark Blondman, BLANK ROME LLP, Wilmington, DE

    Attorneys for Defendant

**MEMORANDUM OPINION**

March 29, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff John L. Hopkins ("Plaintiff" or "Hopkins") filed this action on March 3, 2015 alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and retaliation under the False Claims Act, the Delaware Whistleblowers' Protection Act, and the Oregon Whistleblower Protection Statute. (D.I. 1 at 8-10) Defendant Concorde Career Colleges, Inc. ("Defendant" or "Concorde") filed its original answer and counterclaim on April 6, 2015, alleging fraudulent inducement under Delaware law. (D.I. 8) On April 27, 2015, Plaintiff filed a motion to dismiss Defendant's counterclaim for failure to state a claim. (D.I. 10) Shortly thereafter, on May 14, 2015, Defendant filed an Amended Counterclaim, mooting Plaintiff's motion to dismiss. (D.I. 12)[1] On June 1, 2015, Plaintiff filed a motion to dismiss the Amended Counterclaim for failure to state a claim. (D.I. 13)

For the reasons that follow, the Court will grant Plaintiff's second motion to dismiss.

## II. BACKGROUND[2]

Defendant operates for-profit colleges across the United States. (D.I. 12 at 1) On March 21, 2014, Defendant's CEO separated from the company. (*Id.* at 14) Shortly thereafter, Defendant began a search for a new CEO. (*Id.*) As part of this process, representatives for Defendant met with Hopkins to discuss the possibility that he would serve as Defendant's new CEO. (*Id.*) During these and other meetings, Defendant indicated that if Plaintiff were to serve

---

[1] The Court will deny Plaintiff's first motion to dismiss (D.I. 10) as moot.

[2] This recitation is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in Defendant's Answer and Amended Counterclaim.

1

as CEO, it would be essential for him to "dedicate his full time and attention to Concorde" and to "be physically present at Concorde's headquarters . . . and its campuses." (*Id.* at 15) Plaintiff acknowledged these conditions and promised that, if chosen as CEO, he would maintain a physical presence at Defendant's headquarters and campuses and would dedicate his full time and attention to the job. (*Id.* at 15-16)

Defendant alleges that "when Hopkins made these representations . . . he knew them to be false or made them with reckless indifference to [their] truth." (*Id.* at 16) Defendant further alleges that Hopkins made the statements to induce Defendant to offer him the position of CEO and that, once hired, he did not dedicate his full time to his duties and did not maintain an adequate physical presence at Defendant's headquarters and campuses. (*Id.*)

On October 30, 2014, Plaintiff and Defendant executed an agreement extending Plaintiff's tenure as CEO through 2018 and allowing for termination only "for cause." (*Id.* at 4, 8; *see also* D.I. 1 at 5) Just 11 days later, however, Defendant terminated Plaintiff's employment. (D.I. 12 at 6)

## III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

When a claim involves an allegation of fraud, a higher pleading standard must be satisfied. In such a case, a plaintiff "must state with particularly the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742

F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

## IV. DISCUSSION

In its Amended Counterclaim, Concorde alleges that Hopkins fraudulently induced Defendant to offer Plaintiff the position as its new CEO. Hopkins moves to dismiss this claim.

The parties agree that Delaware law applies, as Concorde is a Delaware corporation and the employment agreement between the parties contains a choice-of-law provision selecting Delaware law to govern their disputes. *See OpenGate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, 2014 WL 3367675, at *10-11 (D. Del. July 8, 2014). In order to state a claim for fraudulent inducement under Delaware law, a party must adequately allege each of the following elements:

> (1) the [other party] falsely represented or omitted facts that the [other party] had a duty to disclose; (2) the [other party] knew or believed that the representation was false or made the representation with a reckless indifference for the truth; (3) the [other party] intended to induce the [alleging party] to act or refrain from acting; (4) the [alleging party] acted in justifiable reliance on the representation; and (5) the [alleging party] was injured as a result of this reliance.

*Mkt. Am., Inc. v. Google, Inc.*, 2010 WL 3156044, at *4 (D. Del. Aug. 9, 2010).

Generally, statements that "are merely promissory in nature" are not actionable as fraud. *Grunstein v. Silva*, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009). There is an exception to this rule when the promisor "had no intention of performing" at the time the promise was made.

4

*See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008).

Concorde contends that its counterclaim comes within this exception. Specifically, Concorde argues that Hopkins acted fraudulently when he promised to dedicate his full time and attention to Concorde and when he further promised to be physically present at Concorde's headquarters and campuses every work week. (*See* D.I. 15 at 7) Concorde contends that these promises were fraudulent because Hopkins had no intention of honoring them at the time he made them. (*See id.*)

Having reviewed the allegations of the Amended Counterclaim, and taking as true its well-pleaded factual allegations and drawing all reasonable inferences in favor of Concorde, the Court agrees with Hopkins that Concorde has failed to state a claim for fraudulent inducement. Concorde has failed to adequately allege that Hopkins knew or believed his promises – to dedicate his full time and attention to Concorde and to be physically present at Concorde's headquarters or campuses every work week – were false at the time he made them.

Concorde's allegation that Hopkins knew his representations to be false and that he had no intention of honoring them is merely conclusory. The Amended Counterclaim alleges nothing more than: "On information and belief, when Hopkins made these representations to Concorde, he knew them to be false or made them with reckless indifference to the truth of the representations." (D.I. 12-1 at ¶ 15) While fraudulent intent may be alleged generally, *see* Fed. R. Civ. P. 9(b), a conclusory statement is insufficient. Instead, Concorde must "plead specific facts that lead to a reasonable inference that the promisor [i.e., Hopkins] had no intention of

5

performing at the time the promise was made." *Grunstein*, 2009 WL 4698541, at *13 (internal quotation marks omitted). Concorde has failed to do so.

In its briefing, all that Concorde adds to its pleading is that Hopkins gave "repeated assurances that he would fulfill [his] duties," arguing that these repeated assurances support an inference that Hopkins never intended to honor his promise. (D.I. 15 at 7) This, too, is insufficient to raise a reasonable inference that Hopkins had no intention to honor his promises. Without any allegation of any specific facts, it is at least equally plausible that the repeated assurances indicate that Hopkins was truly committed to honoring his promise. As the Delaware Court of Chancery has observed, "a party's failure to keep a promise does not prove the promise was false when made." *Grunstein*, 2009 WL 4698541, at *3. It follows that repeated assurances that one will keep his promise likewise does not demonstrate that the promise was false when made.

In its brief, Concorde insists that it included "detail and specificity in its Amended Counterclaim" (D.I. 15 at 7), but the Court cannot find these features in Concorde's counterclaim. In defending the purported sufficiency of its pleading, Concorde also writes: "Concorde asserts that when Hopkins made these representations to Concorde, he knew them to be false or made them with reckless indifference to the truth of the representations." (D.I. 15 at 6) (citing D.I. 12 at 16) This is accurate – but it only confirms that all that Concorde has done is "assert[]" that Hopkins never intended to fulfill his promises. Again, while state of mind need not be pled with particularity, a party alleging fraudulent intent must do more than merely parrot the element of the claim. Instead, it "must plead ***specific facts*** that lead to a ***reasonable***

6

*inference* that the promisor had no intention of performing at the time the promise was made." *Grunstein*, 2009 WL 4698541, at *13 (emphasis added). Concorde has failed to do so.[3]

Accordingly, the Court will grant Plaintiff's motion to dismiss.[4]

## V. CONCLUSION

For the reasons provided above, the Court will deny Plaintiff's first motion to dismiss as moot and will grant Plaintiff's second motion to dismiss. An appropriate Order will be entered.

---

[3]Other facts further undermine the plausibility of Concorde's counterclaim. With respect to the promise to be present at Concorde's headquarters or campuses "every work week" (D.I. 12 at 15), Concorde alleges that Hopkins was physically present during 21 of the 60 days in which he was CEO. As 60 days is no more than 12 five-day work weeks, this fact, even if true, does not show that Hopkins breached his promise to be present. It is also undisputed that Concorde executed an employment contract with Hopkins just 11 days before he was terminated – i.e., at a time by which Concorde would have known that Hopkins had not been physically present "every work week."

[4]Concorde does not ask for leave to file a second amended counterclaim.

7